OPINION
{¶ 1} Plaintiff-appellant, Deborah Merz, appeals a decision of the Clermont County Court of Common Pleas, Domestic Relations Division, denying her contempt motion.
 {¶ 2} Deborah Merz and Daniel Oliver were divorced on January 6, 2000. At the time, Oliver was employed by Senco/Sencorp. As part of its division of the marital property, the trial court ordered that Oliver's pension and 401(k) plan be divided equally between the parties. Specifically, the trial court ordered that Oliver's "Senco Products Inc. Pension with an approximate value through August 1, 1999 of $26,065.19" be equally divided between the parties "pursuant to a Qualified Domestic Relations Order ["QDRO"] to be prepared consistent herewith." With regard to Oliver's Sencorp's 401(k) plan, the trial court also ordered that it be divided as follows:
 {¶ 3} "1. [Oliver] is a participant in the Sencorp 401(k) plan. The Plan is managed by Vanguard and contains the following marital investments which shall be divided equally pursuant to a [QDRO]. It is further agreed that these assets shall be divided on a pro rata basis such that each Party receives an approximately equal basis in the divided shares.
 {¶ 4} "a. Wellington with 492.986 shares as of September 30, 1999.
 {¶ 5} "b. Windsor II with 677.855 shares as of September 30, 1999.
 {¶ 6} "c. Prime Cap with 278.38 shares as of September 30, 1999.
 {¶ 7} "Following division of the marital investments as set forth in a. b. and c. above, [Oliver] shall retain the balance of his Senco Corp. 401(k) Plan, as his non-marital property. * * *
 {¶ 8} "2. The Parties further agree to fully cooperate with each other in signing all necessary forms, documents, releases, transfers or authorizations necessary to give effect to this Section."
 {¶ 9} A QDRO was prepared, signed by Merz in April 2000, signed by Oliver in May 2000, and filed in June 2000. It was then discovered that Oliver had been terminated effective March 30, 2000, that he had rolled his 401(k) plan into an IRA (Individual Retirement Account) with Vanguard two days before he had signed the QDRO, and that a new QDRO was necessary. Oliver admitted that when he signed the QDRO, he knew the 401(k) plan had already been rolled into an IRA. Oliver testified, however, he thought he was simply changing the classification from a 401(k) plan to an IRA, especially since all of the shares in each of the mutual funds he had under the 401(k) plan remained the same in the IRA. Oliver also admitted restricting Merz's attorney's ability to find out what the balance was when the IRA was opened. Oliver explained he believed his only obligation was to have funds available up to the amount stated in the divorce decree. Oliver testified he was not trying to hide anything or deceive anybody when he rolled his 401(k) plan into an IRA.
 {¶ 10} On September 22, 2000, Merz filed a contempt motion against Oliver for failing to transfer half of his pension and 401(k) plan as ordered in the divorce decree. The motion requested that Oliver be found in contempt for failing to cooperate and provide necessary information to execute the QDRO for division of the pension and 401(k) plan, and that he be ordered to compensate Merz for her financial loss and to pay her attorney fees. A QDRO for the division of Oliver's pension plan only was subsequently filed in October 2000. In December 2000, Merz's new attorney filed a notice of appearance in the form of a motion for a continuance, which indicated that the parties were trying to resolve the matter through settlement discussions. In January 2001, Merz received her half of Oliver's pension. A hearing on Merz's contempt motion was held before a magistrate on April 10, 2001, and continued to November 19, 2001. A pretrial order filed in July 2001 indicates that Merz had finally received her portion of Oliver's 401(k) plan, consistent with the divorce decree, and that the remaining issues were whether Merz was entitled to dividends on the 401(k) shares transferred and to attorney fees.
 {¶ 11} In December 2001, the magistrate denied Merz's motion as follows: "There is no language in the Decree of Divorce which indicates that [Merz] is entitled to any profit or loss or payment of dividends on the stock which were, ultimately, distributed to her. Even if there were such language in the Decree of Divorce, [Merz] presented no testimony or evidence as to what the profit or loss was on the shares of stock, or as to what dividends were paid on the shares of stock which were distributed to [her]. Therefore, the Court finds that [Merz] is not entitled to any monies for dividends on the shares of stock from the 401(k) plan.
 {¶ 12} "The Decree does not order either party to be responsible for preparation of the QDRO. The [December 10, 1999] Decision of the Magistrate on Divorce orders [Oliver] to be responsible for preparation of the QDRO. However, this language was not included in the Decree of Divorce which both parties and both counsel signed. The Court further finds that much of the attorney fees paid by [Merz] were the result of her frequent change of counsel, so that each new attorney had to review the file and go over the same information in order to get up to speed with the pending litigation. [Merz's] change of attorneys — three times within nine months — probably generated additional attorney fees for [Oliver]. * * * The Court finds that neither party, nor counsel, is more to blame than the other for the length of time it took to resolve the stock distribution issue. Therefore, neither party shall be awarded attorney fees."
 {¶ 13} Merz filed objections to the magistrate's decision. By entry filed March 19, 2002, the trial court overruled Merz's objections and affirmed the magistrate's decision. The trial court first noted that its review was limited to the evidence presented at the April 2001 hearing as the court had not received a transcript of the November 2001 hearing. With regard to the magistrate's failure to find Oliver in contempt for his transfer of the 401(k) plan in violation of the QDRO, the court found that there was insufficient evidence to support a finding of contempt by clear and convincing evidence. With regard to the magistrate's failure to award Merz her interest and dividends on the shares from the 401(k) plan, the court specifically found that the divorce decree did not contain any language as to interest or dividends. Merz now appeals, raising two assignments of error.
 {¶ 14} Before we address those, we note that our review is, too, limited to the transcript of the April 2001 hearing. While the transcript of the November 2001 hearing was filed with this court, it was never received by the trial court and thus not reviewed by the lower court. Civ.R. 53(E)(b)(3) requires objections to findings of fact to be supported by a transcript of all the evidence submitted to the magistrate or an affidavit of that evidence if a transcript is not available. "When a party objecting to a [magistrate's] report has failed to provide the trial court with evidence and documents by which the trial court could make a finding independent of the report, appellate review of the court's findings is limited to whether the trial court abused its discretion in adopting the [magistrate's] report, and the appellate court is precluded from considering the transcript of the hearing submitted with the appellate record." State ex rel. Duncan v. Chippewa Twp. Trustees,73 Ohio St.3d 728, 730, 1995-Ohio-272, citing High v. High (1993),89 Ohio App.3d 424.
 {¶ 15} We also note that contrary to Merz's assertion, Oliver's attorney was not ordered by the divorce decree to prepare the QDRO. While in her decision on divorce, the magistrate ordered Oliver's attorney to prepare the QDRO, such order was not included in the divorce decree signed by the parties and their attorneys. It is well-established that "[i]n a domestic relations action, interlocutory orders are merged within the final decree, and the right to enforce such interlocutory orders does not extend beyond the decree, unless they have been reduced to a separate judgment or they have been considered by the trial court and specifically referred to within the decree." Colom v. Colom (1979), 58 Ohio St.2d 245, syllabus. The magistrate's order that Oliver's attorney prepare the QDRO was neither reduced to a separate judgment nor specifically referred to in the final divorce decree.
 {¶ 16} In her first assignment of error, Merz argues that the trial court erred by failing to enforce the divorce decree with regard to Oliver's 401(k) plan. Merz contends that Oliver should have been found in contempt for signing the first QDRO after he had knowingly extinguished the fund. Alternatively, Merz contends that the magistrate should have ordered Oliver to transfer half of his 401(k) plan after the April 2001 hearing since it had been established that Merz had not received anything yet.
 {¶ 17} A court may hold a party in contempt where that party fails to comply with a lawful judgment or court order. R.C. 2705.02(A); Mardenv. Marden (1996), 108 Ohio App.3d 568, 570. A movant must prove by clear and convincing evidence that the nonmoving party violated a court order.Rinehart v. Rinehart (1993), 87 Ohio App.3d 325, 328. Once the movant has established a prima facie case of contempt, the person who failed to comply with the order bears the burden of proving his inability to comply with the court order. Id. An appellate court will not reverse a trial court's decision in a contempt proceeding absent a showing of an abuse of discretion. Collins v. Collins (1998), 127 Ohio App.3d 281, 287. An abuse of discretion connotes more than an error of law or judgment; rather, it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 18} The record shows that when Oliver signed the QDRO, the stocks he owned under his 401(k) plan were no longer maintained and managed within a 401(k) plan with Vanguard, but rather were maintained and managed within an IRA with Vanguard. There is no evidence that before being rolled into the IRA, any of the stocks of the 401(k) plan had been dissipated. Upon thoroughly reviewing the limited record before us, the magistrate's decision, and the trial court's decision, we find no abuse of discretion in the trial court's failure to find Oliver in contempt.
 {¶ 19} Merz, however, contends that the magistrate should have ordered Oliver to transfer half of his 401(k) plan after it was determined at the April 2001 hearing that Merz had not received anything yet. We disagree. The record shows that the April 2001 hearing was continued because there was insufficient docket time to complete the testimony. The magistrate likely felt that she did not have all the evidence she needed before issuing an order on Merz's contempt motion. We therefore see no error in the magistrate's failure to order Oliver to transfer half of his 401(k) plan following the April meeting. Merz's first assignment of error is overruled.
 {¶ 20} In her second assignment of error, Merz essentially argues that the trial court abused its discretion by refusing to award her the dividends, gains, or losses attributable to her portion of the 401(k) stock while the 401(k) plan was under Oliver's control following the divorce decree. Specifically, Merz contends that the trial court erred by preventing her from presenting evidence as to those dividends, gains, or losses. Merz also takes issue with several statements made by the magistrate during the April 2001 hearing, including the statement that "[w]ell, my understanding of the status of the law is that if the decree doesn't give you interest you don't get interest." Merz contends that the statements show that the magistrate was confused especially since "stocks do not generate interest, but do increase in value[.]" We disagree.
 {¶ 21} Upon thoroughly reviewing the exchange between the magistrate and Merz's attorney on the issue of dividends and the like, and not merely the selected statements, we find that the magistrate was not at all confused, but rather was making sure she understood Merz's attorney's position on the issue. The magistrate's statement that "if the decree doesn't give you interest you don't get interest" is not to be read as meaning that stocks generate interest. Rather, the statement is to be read as the generic proposition that what is not provided in a decree cannot be later awarded.
 {¶ 22} In that respect, the magistrate was correct. It is well-established that a trial court lacks jurisdiction to modify a property division, including the distribution of a retirement plan, after the issuance of a judgment entry and decree of divorce. R.C. 3105.171(I);Thomas v. Thomas (Apr. 26, 2001), Franklin App. No. 00AP-541.
 {¶ 23} The divorce decree ordered that Oliver's 401(k) plan be divided equally between the parties pursuant to a QDRO. Specifically, the decree ordered that the number of shares in all three mutual funds of the 401(k) plan as of September 30, 1999, and not a percentage of the value of the 401(k) stocks, be equally divided between the parties. The decree did not specify how gains or losses from the 401(k) stocks were to be allocated, if at all, between the parties.[1] While forward thinking might have made provision for this potentiality, the trial court did not do so, nor did either party request the court to do so. Similarly, while the trial court could have awarded Merz a percentage of the plan's value to be calculated at a time which would reflect any post-decree growth or decline, it did not do so. This property division and the lack of any provision as to dividends, gains, or losses were for Merz to challenge on appeal had she seen fit. She did not.
 {¶ 24} There is no evidence that the trial court ever intended to award Merz gains or losses on her portion of the 401(k) stocks. In fact, it could be argued that based upon the divorce decree's provision that "[f]ollowing division of the marital investments [from the 401(k) plan], Husband shall retain the balance of his * * * 401(k) Plan, as his non-marital property[,]" the court intended all gains or losses from the 401(k) stocks following the divorce decree to be Oliver's.
 {¶ 25} Had the trial court awarded Merz the dividends, gains, or losses attributable to her portion of the 401(k) stock while the plan was under Oliver's control following the divorce decree, when such allocation was not provided in the divorce decree, it would have modified the trial court's property division in violation of R.C. 3105.171(I). See, id. We therefore find the trial court did not abuse its discretion by failing to award such dividends, gains, or losses, and a fortiori by preventing Merz from presenting evidence as to those dividends, gains, or losses. Merz's second assignment of error is overruled.
Judgment affirmed.
WALSH, P.J., and YOUNG, J., concur.
[1] We are mindful of the case of Earwood v. Earwood (Nov. 9, 2000), Hancock App. No. 5-2000-17 which Merz cites in support of her second assignment of error. However, we find that Earwood is factually distinguishable from the case at bar and that its holding does not apply here. In Earwood, the wife was to receive $150,000 from her husband's Thrift plan pursuant to a QDRO. The husband's employer did just that, segregating an amount equal to $150,000 from the husband's plan and placing it in a separate account in the wife's name. Several months later, at her request, the wife's account was closed and the money was distributed to her. The wife, however, received less than $150,000 due to downturn in the stock market. The wife filed a motion asking that the husband be ordered to pay her $150,000, and not the lesser amount. The trial court denied her motion. The Third Appellate District upheld the trial court's decision as follows: "at all times, the [wife] was aware of the nature of the asset in question. It was her decision to withdraw the funds at a time when, due to downturn in the stock market, the asset had depreciated. * * * [T]he [wife] was only entitled to the depreciated value of the assets."